Good morning. My name is Derek Howard, and I represent the appellant. Good morning. I'd like to reserve two minutes of rebuttal time, please. Yes, go ahead. The record before the court, Your Honor, here on a Rule 12 motion, is that in the district court below, the counsel for the bank conceded that you could have a breach of fiduciary duty claim in an investment context without it being preempted by solicitors. That's in the transcript. The record also demonstrates that there are no allegations at all of any kind of fraud and misrepresentation in the complaint itself. This is a trust case. This case is about breaches of fundamental fiduciary duties, which are established in the restatement of trusts, both the second and third, and basically go to the very core of the relationship between trust beneficiaries and a trustee. I think that I'm prepared to answer any questions that the court has, but I think that what I really want to communicate here that is so important is that there is a system in place in this country which provides relief to trust beneficiaries when a trustee does something that is wrong. And that system is not based on the securities laws. The securities laws track has a function. Well, the problem is this case all rises within the context of securities. That's correct, Your Honor. But if we were just to step back for a minute and talk about it. There's no question. I mean, you know, the fiduciary has a very special relationship with the beneficiary of the trust. That's correct, Your Honor. There's no question about that. And the reason why, what I understand is we're in this world where your claim sort of deals with securities. Right. And may I address that? Right? Yes. And it's all about what the trustee did with respect to these securities. Correct. Investing in these securities. That's right. Right? Right. I agree. Okay. And so my point that I'm trying to get at is that the only the trust beneficiary has an entire set of rights and remedies that have nothing to do with the securities laws. And so the securities laws are meant to police a certain type of activity which have to do with fraud and misrepresentation being made in the connection with the purchase and sale of the security. Those are securities laws claims. Trust beneficiaries are not investors. They're not investors. They don't purchase. They don't hold. And they don't sell. And if I just may, just to continue on just for one second, the trustee is the one that has the legal title here. And so what the bank I think is really urging, and to answer your question directly, is that there's a special set of rules if a trustee decides to place an equity or a mutual fund into a trust. And that's not the law. In fact, the best academicians in this country have repeatedly said, including in the restatement of third, that if you invest a trust asset in a mutual fund, all the obligations of the trustee as far as prudence and administration, they still all attach. They don't go away. And they're not superseded by the securities laws. So as I understand the way in which this complaint is framed, allegation, is that the bank was responsible as trustee with all this money. Right. Correct. Correct. And invested it in their own funds. Correct. So that they could generate fees that would be paid to them. That's part of it. And by investing it in their own funds, they didn't take advantage of other funds that might have had a greater return. Exactly. And if I could just put one little thing on top, with regard to their investment accounts, they did offer the type of funds to the people that were true investors. But our, of course, the trust beneficiaries have no choice. They get no information. They can't do anything to change it. They're hostage. That's it. But why this sort of sound in notions of fraudulent activity? Okay. I'm glad you asked that because I want to clear that up. Our bedrock for everything starts with the restatement of trusts. And if I could just do a quick bit on the evolution of the investment into mutual funds, I hope this will be able to clear it up for you. Trust departments started out basically as ancillary services to more wealthier clients. This is going back to the 30s, 40s, and 50s. As the banking business evolved in the 70s and 80s, they started to get more aggressive in the type of investments that they wanted to make. There was still an outright prohibition against banks investing in their own mutual funds because of the temptation of conflict and whatnot. And whether you want to be a little bit cynical about it and suggest that it was because of the bank lobbying efforts or because it was more or if you want to be more academic about it to try and bring modern portfolio theory into sync with what the banks were dealing with with all these assets, the legislatures passed rules throughout all the states which basically said there's no longer a per se prohibition against investing in mutual funds. However, you're going to have to send them the prospectuses, and if you take a look at California Finance Code Section 1561.1 and also subsection E on that, it talks about the problem of double dipping because one of the things that they were concerned about with mutual funds is that the trustee would collect a fee for administering the trust and then would take a separate fee on top of it so they would get two fees when instead they were only supposed to really be charging one. That's not what our case is about. But that's the genesis of the issue about needing to have to disclose. So if you look at all the ---- That's just what you just described there. It sounds like fraud. But I know. But, Your Honor, what I'm trying to get at, let me just finish. I understand. But that point is not what is driving this case. If you look ---- It's a feat. You know, it just sounds like fraud. No, I understand. But the elements, going back to the law of what you have to require, what you have to do to deal with the SLUSA issue, is that our case is not at all dependent in any fashion about what they say or don't say to the trust beneficiaries. We don't need ---- because it has nothing to do with whether or not the trustee has been prudent. If you look at the elements, for example, in the restatement of Section 78 of the restatement, it has nothing to do with what the trustee says to the beneficiary. This is a prophylactic statute. In other words, the trustee has to be prudent, and that's it. Your prudence is not measured by whether or not you say something to the beneficiary. Your prudence is measured simply by whether or not it's a good investment. Our case is very simple. These are bad investments. They wouldn't have been able to give them to people that were not trustees because they were underperforming and they were high fee. If you ---- if you ---- if that ---- if the right to pursue your trustee for that claim is eliminated, there are no more safeguards left for trust beneficiaries at all. There will never be securities cases because that doesn't even estab ---- Breyer. The problem here is you file it as a class action. That's why you wouldn't do that. Well, I understand, Your Honor, but ---- You could pursue, you know, sometimes people who have their ---- this kind of money with the bank have lots of money and there's lots at stake just as an individual. But realistically, Your Honor, having done trust law now for almost 20 years, I can say to you that is a completely unrealistic, impractical ---- it will never happen because the only way that the trustees ---- and we've submitted evidence to the court showing time and again in the class actions that we have pursued and there's not a lot of people that do this, that the only way that you get a remedy against a trust beneficiary is if they have to change their practices as to everybody because one person ---- it's almost impossible to find an attorney that's even going to take on a single case. And to also point out something that's very important, the remedies that are provided here in all the state statutes and also ---- and they're described in the restatement of trusts is that there's also equitable remedies. So, for example, if a trustee was engaged in putting trust beneficiaries into a bad asset. How big is your class? Thousands, tens of thousands. This is very, very significant money. If I could just finish the thought, Your Honor, is that it's not just about the damage that was lost, it's getting them to stop it. In other words, what the trust beneficiaries are entitled to is an honest trustee who's going to make prudent investments for them. And the trust beneficiaries, unlike the security situation where you have investors who are actively managing, they have no burden in this relationship. They are not required to police and monitor and check all the investments that the trustee is making. Rather, they enjoy the benefit of not having to do that. Let me ask you this. I've sort of lost track of California law. I know it's changed somewhat. Yes. But why couldn't an individual investor, I don't know of an investor, but somebody who has a trust like this, just an individual as a trust, why couldn't that person bring not only the claims here, but also an unfair business practice under California law? There are claims here. Does the unfair business practice law now sort of require compliance with class Well, it does have that standing issue. Well, yes, in a word, yes. But if I could just explain part of the difficulty of what a trust beneficiary faces in a non-trust context. If you want to challenge a trustee, you have to find a trust attorney who's going to file a petition, and then you have to have a dispute. It's typically done on an individual basis in a probate court. And the trustee, you know, there's also a whole issue. There's a whole power of authority that a trustee holds both legally and somewhat morally over trust beneficiaries. It's very scary for a trust beneficiary to go to a trustee who basically is controlling their money and the amount of income that they're getting and say, I'm going to sue you. And the trustee says, if you do that, then I'm going to try and charge you for costs, and you better not rock the boat because we're the trustee. So there's a whole power thing that's held over them. But if there's enough money involved in it, those sorts of suits are filed in Ohio all the time. I know that. Well, Your Honor, those are the wealthier clients. Those are the large trusts. There are many, many trusts that have a net value of under $500,000, even under $300,000. And for the amount of money that's involved per trust, you can't get anybody to do it. I mean, this is really the last stop for these trust beneficiaries. Let me ask you a few questions. Now, this complaint that we see here looks kind of similar to complaints that we've seen in other districts around the country. I can explain why they're different. Okay. And the other circuits that have looked at this issue have not been too sympathetic. Okay. The Janus. Why is this any different? And why would we want to part company with our sister circuits? Okay. Two reasons. I would invite the court to look carefully at the other complaints. The genesis of these other cases that the bank cites expressly and explicitly alleged securities fraud violations and the expressly alleged fraud. We don't and we never will because the whole concept of this is that a prudence claim is not a fraud claim. It is strictly a question of was it prudent or was it not. That's the end of the inquiry. If you look at those complaints, they were different. They did allege fraud. I mean, we laid it out on the record very specifically that they alleged fraud and then what happened after they alleged fraud and the court said you can't do that, they came back and they said, oh, you alleged fraud before and now you've taken it out so now you're just running around sluice and you're engaged in so-called artful pleading. We have – this is our first complaint. We've never alleged any fraud and we don't need to allege fraud because that's not the predicate acts that are necessary to this case. The only thing we need to show through discovery and then a trial is whether or not this was prudent or not. That's all we need to show. And if this – What are the elements of that claim? I'm sorry? What are the elements? Well, thank you for asking. I have in front of me here our Bible, the California Probate Code. If you take a look at Section 16-040, which is the standard of care, the test is as follows. The trustee shall administer the trust with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a light capacity would use. And it also – Section B then also talks about how you have to do it consistent with the economic conditions at the time. And so, you know, boiled down to its essence, Your Honor – Would a prudent trustee keep the beneficiary informed? Irrelevant. Irrelevant. The issue of disclosure, Your Honor, only goes to the point that I talked about before about 1561.1, the example statute that I'm giving you, which was when they had the change in the law which allowed the trustees to – which allowed the trustees to invest in their mutual funds. I just want to read one thing to you, Your Honor, to clear this up. I hope this will help because I think it's really important. Okay. Go ahead. This is out of the Restatement of Trust Third, and it's Section 78. It is essential to note that the statutory exception for corporate trustees' participation in what are generally called, quote, proprietary mutual funds does not relieve the trustee of its normal duty to exercise prudence. That's the Restatement Third by the best trust people. This is after all the laws have been passed and after Sluice has been on the books for 10 years. This is the 2011 version. Nor does it dispense with the trustee's fundamental duty to act in the interest of the beneficiaries, its duty of impartiality, or the other fiduciary duties of trusteeship. Your Honor, I don't know how to – Let me ask you this. I just – this is so important to trust beneficiaries. I understand. Let me ask you – the district court didn't give you leave to amend. Did you ask for leave to amend? Well, Your Honor, it was kind of a funny hearing. We said the answer is yes, and at the end, in the middle of the transcript, we said, well, we guess if you've got an issue with this, we can clean it up. And then we had oral argument at the end, and maybe the State Committee kind of thought that things weren't going well because we had thought we had established there was no fraud or misrepresentation. And so there was kind of a little bit of a colloquy at the end where, you know, it essentially came to something like, well, you know, we thought we had done a good job, so we don't really need to change it, but if we need to change it, we'll change it. What would you do to amend? How would you amend? I guess that we could probably say less to eliminate the confusion as to how it is being interpreted, what we're trying to say when we're not. I think the thing that, you know, what we could do is we could probably say less in the sense of we could just make clear that this is which we thought we did, but I guess maybe we didn't do as good a job as we thought, to say this is an imprudence claim and we could eliminate the language which is causing the confusion as far as conflict of interest and whatnot. But, you know, the issue about fees for the Court's benefit, when there's an improper investment made, two things happen. There's damage to the trust in terms of return and income, and there's increased fees for the trustee. That's a damages issue. It's not a pleading issue. And I kind of feel like to some degree, you know, we're sitting there in this strange world of, you know, heads they win, tails we lose, because if we put in a complaint that says they're being imprudent and we don't allege fraud, then they come back and attack us and say, well, you know, you didn't say it, but you really mean it, so we don't even get to write our own complaint anymore. In other words, we don't even get to define our own cause of action. The elements in the causes of action don't have anything to do with fraud or nondisclosure, but they come back and it's like they're rewriting our complaint on our first effort and saying your complaint's not what you say it is. I mean, we don't know how to say anything other than this is imprudent and you can't do it as a trustee. So it's a little bit we feel like the other thing is we're kind of getting tarred by these earlier cases that were filed by securities lawyers that allege securities fraud. It has nothing to do with us. Roberts. Okay. So. Let's hear from the bank. Okay. Unless Judge Hug or Judge Watson have further questions.  Thank you. I'll give you some time for rebuttal. Thank you. Your Honor, let me speak to a couple points on what the issue actually is in this case, and it certainly isn't a question about what State law remedies exist for people who are trust beneficiaries on any level. What this case is about is the preclusion of a large class action that falls within the confines of SLUSA. Right. And SLUSA says that no covered class action based upon the statutory or common law of any State may be maintained in any State or Federal court by any private party alleging. Right. A misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security. Correct. They say they're not alleging that. Well, but they are alleging that, Your Honor. And let me try to break this down a little bit for purposes of analysis. But the point on the State trust law is that the question about whether you can bring a class action in this context, if SLUSA is triggered or not, has already been debated. Congress has decided it. And the policy in this case is not a preference for class actions. It's against class actions. If there are nationally traded securities that are involved and you have allegations that meet the statute, then that's the end of the inquiry. Now, the second thing. But there have to be allegations of either misrepresentations or omissions. And I can't see how there is any. Two things there. And I want to make this point clear on what we're actually looking at. The predicate facts that trigger the statute, the omissions, the misrepresentations or the deceptive scheme, plan or contrivance, do not have to be essential elements of the cause of action in the claims. This Court's already addressed that in the Proctor case, and multiple cases in other jurisdictions have said this. So what you're looking at is not some formulaic search, Your Honor, for the buzzwords in the statute, but what's behind the complaint. Is there a deceptive scheme? Is there a deceptive plan? Are there things that the beneficiaries don't know that they should know? Those are the omissions. Those are the issues. This complaint, from start to finish, is replete with things that the beneficiaries didn't know and weren't told. And it is all done pursuant to a company practice and policy that, in the end, deceived the beneficiaries and charged them excessive fees. That's what their imprudent investment claim is all about. It's the case. Breyer. Well, let me ask you this. Can you ever have a fiduciary claim, then, that satisfies, that doesn't violate a fiduciary class action that doesn't violate this provision? You could have an individual action. I said class. Class. As a class, not if you plead a deceptive, manipulative scheme against a class of beneficiaries that involves nationally covered securities as the gravamen of the claim. So once there's any allegation of securities that are covered under the Securities Act, then it's your position that they just can't maintain a class action? If the predicate features of the statute are satisfied, that is what the law is, and that's what the law requires. So if Mr. Howard is granted leave to amend and only alleges imprudence on behalf of the trustee, what's the bank's response? The bank's response would be that that is the classic case of artful pleading that Congress has said and the courts have said should not be permitted in this context. Did Congress intend to leave trust beneficiaries no remedy? It hasn't left trust beneficiaries with no remedy, Your Honor. It has said that in this context where nationally traded securities are involved, the policy of the law is not to favor class actions, and there's no trust beneficiary exception anywhere in that statute. He has a remedy. She has a remedy. Any individual has a remedy, or they can bring a case with less than 50 people. So 48 people. 48 people. They can file the lawsuit. In the U.S. mortgage case, this Court said that. In the Proctor case, it said that. Can they maintain that case in the State court? They can, Your Honor, yes, because it wouldn't be under SLUSA's removal provision, and they could file a UCL claim and seek an injunction if they want to. But let me come back to this complaint, because there isn't any debate here that this is a deceptive or manipulative scheme and that that is underlying all the implications   The point is that there are some prudent investment arguments that they make about the excessive fees. You're not admitting that there's an exempt that sort of scheme. You're saying that's the allegation. That's the allegations. I mean, it — the bank effectively concealed what it was supposed to disclose, and it funneled the beneficiaries into these excessive fee assets. And they call it a uniform practice. They call it an unlawful policy. They say the bank made omissions. There are allegations of concealment of the information in the complaint. And it's not hidden. It starts in paragraph 4. It's picked up in paragraph 11. Look at paragraph 18, 19, paragraphs 24 to 28. The unlawful scheme, the breach of duty, is tied directly to these fiduciary investments. Paragraph 25 and 36 have specific allegations of concealment. And if you look at the prefatory language in each of the causes of action, paragraphs 54, 58, 59, 60, 64, 67, 71, what you'll see is that the defendants' illegal actions, omissions, failures to act, are made pursuant to a uniform company policy. This is a classic deceptive scheme. But you don't have to take my word for it, Your Honors. We have cited the Balin case, the Kurz case, the Dahmer case, the Edward Jones case, the Solomon Smith Arne case, the Dudek case, the Rowinsky case. All of these cases are about excessive fees and kickbacks paid to people who were And what these cases have said is that when you have an inherent conflict of interest of this kind, you are talking about deception, you are talking about manipulation, you are talking about nondisclosure, and there isn't any case to the contrary. Now, we don't need an analogy here, though, Your Honors. As Judge Payas pointed out, there are six courts that have already looked at this and said it is within SLUSA. And if these plaintiffs are pleading around it, that, again, is artful pleading. It doesn't change the nature of the scheme. And in the Siegel case from the Sixth Circuit, that's what the Court said we're looking at. What's the concept behind the causes of action? It's not a formulaic search for the buzzwords in the statute. What's the concept? And fairly read, this complaint is about a deceptive or manipulative scheme funneling assets into nationally traded securities where there were excessive fees. This claim is at the heart of what SLUSA is about. It's not on the periphery. It's right smack in the middle of it. Now, Congress could have taken a different approach here. And, in fact, some circuits that first addressed these issues took a more liberal approach with the statute and tried to let these class actions go forward. The Supreme Court put a stop to that and dab it and said that this statute deserves a broad and flexible construction, not in favor of class actions, but to bring cases within SLUSA where nationally traded securities were involved. Breyer, that all intended to deal with the problem of plaintiff's lawyers who were trying to get around the securities. Well, that's the policy decision that was made. I understand. And we can't reinvent that or redebate it. Now, every case that's been decided in this circuit has made this precise distinction. And where the claims have involved breaches of fiduciary duty or omissions or deception, the courts have said those claims fall within SLUSA. And it's applied a broad and flexible construction. You see it in Proctor. You see it in U.S. Mortgage. You see it in the nonpublished Beckett decision. Now, if you have claims that are within the exceptions, like the La Sala case from the Third Circuit, that is a Swiss money laundering claim. And the courts said that's not about breach of fiduciary duty, which, by the way, was the claim in the Dabbitt case. It's not about misrepresentation or omission. It's a criminal statute. Okay? La Sala said if we had a case like this one, like ours, the Rowinsky case would control because the predicate acts that underlie the complaint would be within the statute. The Charles Schwab case that they like is the same thing. It's a corporate formality breach and ultra varies act. That's what was being litigated. Not a core claim involving the trading of national securities with excessive fees, conflict of interest, and inherently involving deception and manipulation by a bank. We know the answer to this question as a matter of law. We know it as a matter of this pleading. And we know it as a matter of congressional policy. Now, on leave to amend, two things there. First, that there was no argument in the opening brief in this case about allowing leave to amend. They waived that argument. No, we always have. We can always exercise our discretion. You do, but, Your Honor, you know, I understand that, and the Court can do it. But the point is that argument was not made. And we said that in our responding brief, and there was agreement on that point. Second, that colloquy in the district court is very important for why amendment is not appropriate in this case. The colloquy was, hey, look, we have a complaint here that triggers SLUSA. It's got a deceptive and manipulative scheme in it. There's omissions. There is the failure to supply information. What can you do about that? And they said, well, we can edit it and delete some of that so it doesn't meet the statute. And we're just talking about imprudent investment. Well, Your Honors, as I said before, for the Court to allow an amendment in those circumstances would violate the case law and the principle that artful pleading should not be avoiding this statute, that it should be broadly construed to pick these class actions up. So there's no basis to amend here or not. It's kind of surprising, though. I mean, I understand what you're saying, but my experience is still what I see today in my role as a circuit judge and when I was a former district judge. I mean, it's a rare day that I didn't grant leave to amend. But here, you know, this is a matter of prudence. Let me make this point on that, Your Honor. What these cases have said very clearly is that in this instance, in this narrow instance where we have this congressional policy in play and the intent to keep these large class actions that implicate SLUSA out of court, they aren't the master of their complaint. They don't control the ability to take out the eraser and the editor. Rather, this artful pleading doctrine takes place because if you let them amend, you are in effect letting a class action go forward that we know triggers the problems with the statute and that we know violates congressional policy. So in this narrow instance, Your Honor, I agree that leave to amend, whether it's a matter of course in other circumstances, here it manifestly is not and it would unsettle the congressional policy to allow it. Do trust beneficiaries have a remedy against an imprudent trustee? Yes. Where is it? It's in State court or Federal court if they want to plead it. And the remedy is? As an individual. Individual. Yes. Or in an action with less than 50 people. We're not suggesting that they aren't or they don't. It's only the large class actions that implicate the securities law that SLUSA is taking aim at. And SLUSA is intended as a gap filler. It wasn't. So if counsel is representing beneficiaries of a trust like this, wanted to round up the 49 class, 49 individuals, he could bring a case. Yes. And I guess, you know, I guess he could advertise for people like that. He can do whatever. Yes, Your Honor. I mean, that's what this Court said in the U.S. mortgage case. That's appropriate. It's the large class actions that Congress took aim at. And they were the ones that were unsettling securities law. That's what they said. So I guess they could try and bring this under the Securities Litigation Reform Act, right? They can. To beat the heightened pleading requirement. Yes, they can. That's, you know, that's the realm that we're operating in here, Your Honor. Yes. But if the complaint were to say just solely that we're only concerned with the prudence of the trustee in doing it, nothing about misrepresentations and so forth to the beneficiaries, just we just, this is an imprudent way for the trustee to proceed, wouldn't that avoid the preemption of a citizen? It wouldn't here for two reasons, Your Honor. First of all, those buzzwords are not critical necessarily. It's the concept that's behind the complaint that matters. And here what we know is that what lies behind these claims of imprudence is omissions and deception by the bank in not making disclosures and in charging the excessive fees. So the editing is not going to help that process at all. It's not going to change the concept that lies behind the allegations in the complaint. Well, maybe, shouldn't that maybe be dealt with on a motion for summary judgment when you force them to come forward with how they're going to prove their claim? No, Your Honor. The allegations in this complaint, we already know the answer. It shows that this is a deceptive and manipulative scheme. But we don't know the answer. We don't know what they're going to be able to come up with. But, Your Honor, it's not about the merits of the claim. We're talking about the merits. I'm just saying, in following up on Judge Hugg's question, if you give them a chance to amend and they plead what appears to be, quote, unquote, an imprudence complaint, then, and your claim is, oh, well, no, it's really, this is just really nothing about a deceptive scheme, why shouldn't that be ferreted out in a motion for summary judgment? Well, I'm going to be repetitive here, Your Honor, but I'll make two points on that. First, from this complaint and the paragraphs and allegations that I identified, we already know that this is a deceptive and manipulative scheme that triggers SLUSA. We know it also from the other cases that have decided and looked at this very scheme. So on that level, we know everything we need to know to apply SLUSA, and SLUSA is a pleading statute. It's not a proof statute. It's intended to knock the class actions out. Second, Your Honor, manifestly ---- No, it just says no covered class action may be maintained. That's right. May be maintained. Alleging. Alleging. That's not a matter of proof, Your Honor. It's a matter of what's in the complaint. The second point would be, as I've said previously, if you allow the amendment here, what we now all know is a complaint that falls within SLUSA. You have allowed the very artful pleading that the courts have said we cannot permit and that would defeat the objectives of Congress. Okay. Thank you. We've been very generous with your time. Thank you. There's a lot there, Your Honor. Number one, we never said we couldn't amend the complaint. We just said we thought we had covered it. Most importantly, the district court found there was no allegation of fraud and misrepresentation in that complaint. That's in the opinion for the district court. Now, we don't agree with his ultimate conclusion, but all these things that you've heard just now about how we allege fraud and misrepresentation are gross and completely false mischaracterizations of what are in our complaint. They can give no specific language in the complaint that we allege fraud. We never did, and they are not elements of our claim. We can amend this complaint to state concisely and quite clearly what the elements are of an imprudent investment. It has nothing to do with disclosures, and we will not call any witnesses that say what they did or did not say. It's not necessary. It's not an element. Please read our brief. Well, you know, the one thing that the bank's counsel makes an argument that I found you have to deal with is you can't get around the notion of artful pleading. Your Honor, absolutely. Our case law says you can't, you know, you can't engage in pleading tactics and allegations that attempt to skirt around the prohibition in the statute. Your Honor, I don't have an issue with that, but I think that, you know, there's another end of the extreme, which is if you actually write a valid complaint that's actually a good complaint, and then the other side just reflexively says that's artful pleading, where do we go from there? I mean, what if you actually write an honest complaint that says they're imprudent and they violated trust duties, and they come back and they say, well, that's just artful pleading? What sort of proof do you come forward with that? Let me tell you what it is, Your Honor. The Federal Reserve and the Office of the Comptroller of the Currency, there's a thing called Reg 9. They have an annual review of the trusts every year. Our evidence at trial will show that they violated the regulations that are required by the OCC, that they did not put in the file as they're required to do, that these trust investments are appropriate for the trusts. We're going to show that there was not a rational basis for them from a modern investment theory. We're going to show that they had other alternatives. They had higher performing funds, which they chose to ignore, but they offered to the non-captive folks. Our case is all about what happened in the executive suites in this trust department. Trust departments are basically, by their very nature, completely insulated from the people that they serve. They don't have to tell them anything. They don't have to give them any explanation for anything that they do. It all goes on behind a closed door. Our case will show that what happened in there was poorly managed investments. That's it. That's all we have to show, and that's the case. A couple of things that I just want to emphasize. I didn't get into this here at the hearing because I think it's a very long discussion, but it is our position that this is a technical statute. Judge Alsop found in the Charles Schwab case that if you don't allege fraud and misrepresentation, SLUSA doesn't apply. There's a Third Circuit line of cases, including LaSalle v. Bordier, which basically says, you know, what are basically the necessary facts that are the predicate to the claim. We're saying now, and we can say in an amendment, that the necessary facts to this case have absolutely nothing to do with fraud, misrepresentation, or any communications at all because the trust beneficiaries, in a securities context, cannot possibly fall within the reach of SLUSA because they're not purchasers, holders, or sellers of a security. On DABIT, I would urge the Court to go back and read page 1515 of that decision, which is the famous one that kind of started this whole hubbub. SLUSA was intended to stop the migration of Federal Securities Acts into state court. And that all occurred after the Securities Litigation Reform Act. That's right. And lawyers were trying to get around it by going into state court. And this Congress said, uh-uh, you're not going to do that. Exactly. Okay. And so if you look in that decision, it does say, as counsel likes to point out in all the papers that they file in all these cases, that SLUSA should be read expansively. We're not quibbling with that. The part that they never talk about is that they also said in that case of page 1515 that SLUSA is not intended to take away valid state law claims. Trust cases are traditionally state law claims that have been for 150 years. There is no way on earth that Congress intended to take away state law claims for breach of contract, breach of fiduciary duty, all things which are traditionally in state court. We are here because we moved under CAFA, as we're required to do. We have to file in federal court. We're not trying to end-run anything. We're just trying to get a forum where we can get a class, where we can get a class case on state law claims. And I will say this, and you've been very generous with the time, and I just want to put this out there. What's really being proposed to this Court is extremely dangerous. Elimination, the notion of eliminating a trust law remedy where billions of dollars are being held and saying you've got to limit it to 48 people, that is dangerous. And you will note in their briefs there is not a single word about trust law in their opposition brief. Thank you. Thank you. We appreciate your arguments. Interesting case. The matter is submitted at this time.
judges: Watson, Hug, Paez